IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MAX L. TUITELE,<br><br>       Plaintiff,<br><br>vs.<br><br>KILOLO KIJIKAZI, Acting Commissioner of Social Security,<br><br>       Defendant. | Case No. 21-cv-00200-DKW-RT<br><br>**ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY** |

      Plaintiff Max Tuitele appeals the decision of the Acting Commissioner of Social Security, which denied him disability insurance benefits, asserting that the Administrative Law Judge (ALJ) failed to properly consider the medical opinions of Drs. Kelsey Fujinaka and Salofi Laititi. After careful review of the record and the parties' arguments, the Court disagrees. First, contrary to Tuitele's contention, the ALJ provided a thorough explanation of why he was not persuaded by Dr. Fujinaka's opinions. Second, although one of the ALJ's reasons for discounting Dr. Laititi's opinions was incorrect, the remaining reasons given are supported by substantial evidence in the record. Therefore, as more fully set forth below, the Court AFFIRMS the decision of the Acting Commissioner.

# BACKGROUND

## I.  Review of Disability Claims

A five-step process exists for evaluating whether a person is disabled under the Social Security Act (SSA).  20 C.F.R. § 404.1520.  First, the claimant must demonstrate that he is not currently involved in any substantial, gainful activity.  *Id*. §§ 404.1520(a)(4)(i), (b).  Second, the claimant must show a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities.  *Id*. §§ 404.1520(a)(4)(ii), (c).  Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.  *Id*. §§ 404.1520(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's residual functional capacity (RFC) to perform work.  *Id*. § 404.1520(e).  The evaluation then proceeds to a fourth step, which requires the claimant to show his impairment, in light of his RFC, prevents him from performing work he performed in the past.  *Id*. §§ 404.1520(a)(4)(iv), (e), (f).  If the claimant is able to perform his previous work, he is not disabled.  *Id*. § 404.1520(f).  If the claimant cannot perform his past work, though, the evaluation proceeds to a fifth step.  *Id*. § 404.1520(a)(v),

(g).  At this final step, the Commissioner must demonstrate that (1) based upon the claimant's RFC, age, education, and work experience, the claimant can perform other work, and (2) such work is available in significant numbers in the national economy.  *Id*. § 404.1560(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at step five, the burden moves to the Commissioner).  If the Commissioner fails to meet this burden, the claimant is deemed disabled.  20 C.F.R. § 404.1520(g)(1).

## II.     The ALJ's Decision

On July 27, 2020, the ALJ issued a decision finding Tuitele not disabled for purposes of the SSA from the alleged onset date of April 15, 2017 through the date of the decision.  Administrative Record ("AR") at 15-16, 30.  At Step One of the evaluation process, the ALJ determined that Tuitele had not engaged in substantial gainful activity since April 15, 2017.  *Id*. at 17.  At Step Two, the ALJ determined that Tuitele had the following severe impairments: hypertension; hypertensive heart disease with supraventricular tachycardia; lumbago; cervical spinal stenosis; stage 1 testicular cancer, status-post left orchiectomy; obstructive sleep apnea; diabetes, with neuropathy; obesity; gout; and chronic liver disease.  *Id*.  At Step Three, the ALJ determined that Tuitele did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations. *Id*. at 21.

Before reaching Step Four, the ALJ determined that Tuitele had the RFC to perform "sedentary" work, except "occasional postural activities; occasional climbing stairs and ramps; no excessive fumes, odors, dusts, gases or poor ventilation; occasional hazardous machinery and unprotected heights; and no ladders, ropes, or scaffolds." *Id*. at 23. At Step Four, the ALJ determined that Tuitele was capable of performing past relevant work as a personnel manager. *Id*. at 29. As a result, the ALJ determined that Tuitele was not disabled from April 15, 2017 through the date of the decision. *Id*. at 30.

On February 19, 2021, the Appeals Council denied Tuitele's request for review of the ALJ's decision, making that decision the final decision of the Commissioner. *Id*. at 1.

## STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id*. (quotation omitted). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* at 679; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.").

In addition, a court may not reverse an ALJ's decision on account of an error that is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quotation and citation omitted). In making this assessment, a court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id*. at 1115.

## DISCUSSION

Tuitele argues that the ALJ failed to properly consider the opinions of Dr. Fujinaka and Dr. Laititi. Dkt. No. 14 at 11-25. The Court addresses the arguments with respect to each doctor in turn below.

I. **Dr. Fujinaka**

Tuitele argues that the ALJ not only failed to properly consider Dr. Fujinaka's opinions, but that the ALJ failed to consider them "at all in [the] RFC assessment." *Id*. at 11. Tuitele contends that this failure constituted harmful error because Dr. Fujinaka opined that Tuitele would not be able to sustain simple tasks at work, Dr. Fujinaka's opinions were supported by her findings and consistent with the evidence, and the RFC failed to account for Tuitele's psychological limitations. As more fully discussed below, the Court disagrees.

Notably, while Tuitele accurately observed that, in the RFC component of the decision, the ALJ did not address the persuasiveness (or lack thereof) of Dr. Fujinaka's opinions, the ALJ did do the same elsewhere in the decision. Specifically, in a lengthy paragraph that appears in the decision before his substantive discussion of Tuitele's RFC, the ALJ explained why Dr. Fujinaka's opinions were "not persuasive…." AR at 20. While this discussion of Dr. Fujinaka's opinions may have taken place in the Step 2 component of the decision, *see id*., Tuitele provides no meaningful explanation for why this matters, given that the ALJ discusses the factors of supportability and consistency that are relevant for the RFC analysis. *See* 20 C.F.R. § 404.1520c(b)(2). Put another way, it elevates form over substance to say that the ALJ erred here in *where* the analysis of Dr.

Fujinaka's opinions was placed in the decision, when the actual analysis contains all the explanation necessary for considering a medical opinion. *See id*.

The only remaining question, therefore, is whether the ALJ's analysis of Dr. Fujinaka's opinions was supported by substantial evidence. *See Ryan*, 528 F.3d at 1198. The Court finds that it was. With respect to supportability, the ALJ determined that Dr. Fujinaka's opinions were not supported by findings at a consultative examination, noting that, while Tuitele appeared fatigued, he adequately attended to questions from an examiner and to materials presented. AR at 20. Among other things, Tuitele was also alert, had logical and coherent thought processes, and no problems with concentration. *Id*. In his briefing, Tuitele does not contend otherwise. Instead, he points the Court to different observations from the examination that he contends support Dr. Fujinaka's opinions. *See* Dkt. No. 14 at 15. At best, in doing so, Tuitele points to conflicts in the record−something which is not the place for the Court to resolve. *See Treichler*, 775 F.3d at 1098. Instead, it is the ALJ's place, as occurred here.

With respect to consistency, again, much the same is true. At best, Tuitele points to parts of the record that he contends are consistent with Dr. Fujinaka's opinions. *See* Dkt. No. 14 at 15-16. In doing so, however, he ignores the ALJ's numerous evidentiary references indicating a lack of abnormal mental findings and

a lack of fatigue. *See* AR at 20. In this light, Tuitele is again essentially asking the Court to re-weigh the medical evidence and give more weight where the ALJ gave less or none. Whether or not the Court would have reached a similar conclusion as to the persuasiveness of Dr. Fujinaka's opinions, there is substantial evidence in the record to support the ALJ's decision in this regard, and it is affirmed on that basis.[1]

## II. Dr. Laititi

Tuitele argues that the ALJ failed to properly consider the opinions of Dr. Laititi in various respects. Dkt. No. 14 at 18-25. First, Tuitele argues that the ALJ erroneously considered Dr. Laititi not to be an approved medical source. Second, Tuitele argues that the ALJ erred in finding Dr. Laititi's opinions to be unsupported by a detailed explanation. Third, Tuitele argues that the ALJ erred in considering the supportability and consistency of Dr. Laititi's opinions. As discussed more fully below, while the Court agrees that Dr. Laititi was a qualified medical source, there was still substantial evidence in the record to support the

---

[1] Tuitele also argues that the ALJ should have included psychological limitations in the RFC. Dkt. No. 14 at 16-18. Other than Dr. Fujinaka, who, as discussed, the ALJ properly discounted, Tuitele points to no evidence in the record supporting the inclusion of such limitations. The evidence, in fact, supports the contrary. *See, e.g.,* AR at 71-85, 100-116.

ALJ's findings that Dr. Laititi's opinions were not supported by or consistent with the record.

The Court begins by addressing the ALJ's remarks on Dr. Laititi's qualifications and/or doctoral status. This was undoubtedly error. Not least because the *Social Security Administration* hired Dr. Laititi to perform the very task that he performed when examining Tuitele. *See* 20 C.F.R. § 404.1519g(a) ("We will purchase a consultative examination *only* from a *qualified* medical source.") (emphasis added); *see also* 20 C.F.R. § 404.1519g(b) ("By 'qualified,' we mean that the medical source must be currently licensed in the State and have the training and experience to perform the type of examination or test we will request…."). For the Administration to then question, through the ALJ, its own hiring practices is, thus, absurd.[2]

Simply because the ALJ erred in this regard, though, does not mean that a decision should be reversed. *See Tommasetti*, 533 F.3d at 1038. This is particularly so where, as here, the ALJ gave additional reasons for finding Dr.

---

[2] Equally absurd is the government's contention, in its opposition, that the ALJ "understandabl[y]" questioned Dr. Laititi's qualifications. Dkt. No. 21 at 21. As an initial matter, the ALJ did not "question[]" Dr. Laititi's qualifications. *See id*. Instead, the ALJ flatly stated that Dr. Laititi was not a doctor. AR at 50-51. Moreover, it is surely the ALJ's job to know the meaning of a doctor's qualifications, especially when that doctor is hired by the same agency for which the ALJ works.

Laititi's opinions unpersuasive. Specifically, the ALJ also found Dr. Laititi's opinions to be unsupported by his exam findings and inconsistent with other evidence in the record. AR at 29. With respect to supportability, the ALJ found that the exam findings were "relatively normal compared to the extreme limitations opined." *Id*. Tuitele contends otherwise, arguing that Dr. Laititi's exam findings support his opinions, including findings about, *inter alia*, limited and difficult movement, decreased strength, and signs of exhaustion. Dkt. No. 14 at 21-22. The Court disagrees that Dr. Laititi's limitations, which are extreme in the context of Tuitele's medical record, are supported by his exam findings. Specifically, Dr. Laititi opined that Tuitele, during a workday, could only sit for 2 hours, stand for 1 hour, and walk for 30 minutes. AR at 388. Dr. Laititi further opined that Tuitele could not ambulate without using a wheelchair or other device. *Id*. at 392. In his briefing, however, Tuitele provides no explanation of how the exam findings, which reference "limited" movement, active movement being "difficult", or "signs of exhaustion", support these opinions. Nor, much like the ALJ, is it discernible to the Court. *See id*. at 29. Therefore, the Court does not find that the ALJ erred in assessing the supportability of Dr. Laititi's opinions.

With respect to consistency, the ALJ found that Dr. Laititi based some of his limitations on Tuitele's gout, which was "inconsistent with other evidence in the

record" indicating that his gout was under control. *Id.* The ALJ further found that Dr. Laititi's opinions were inconsistent with a "lack of significantly abnormal exam findings on a consistent basis." *Id.* Tuitele argues, first, that the ALJ misconstrued Dr. Laititi's opinions as limiting him "when he is not having a gout attack[.]" Dkt. No. 14 at 23. Second, Tuitele argues that his medical record is not absent abnormal physical findings. *Id.* at 23-24. The Court disagrees in both respects.

    First, the only rational reading of Dr. Laititi's report is that the limitations contained therein concern Tuitele's limitations generally, not only when he is suffering a gout attack. Specifically, for example, the questions in the report ask a doctor to opine on things such as "how many hours the individual can" sit, stand, and walk. AR at 388. The questions do <u>not</u> ask how many hours an individual can sit, stand, and walk *while undergoing a gout attack*. The fact that, in the explanation of his opinions, Dr. Laititi stated that–"when he gets his gout attack he is unable to walk"–does not transform the underlying opinion to one solely concerning a possible gout attack. Rather, the two are entirely consistent as one involving general limitations and the explanation involving even stricter (gout-specific) limitations, given that Dr. Laititi explained that, when suffering a gout attack, Tuitele would be unable to walk, while, generally, Tuitele would be able to

11

walk for 30 minutes. *See id*. Similarly, with respect to the operation of foot controls, Dr. Laititi stated that Tuitele could do this with his left foot occasionally, and then explained that, during a gout attack, Tuitele's left knee and ankle are "mostly affected." *Id*. at 389. Nothing in the explanation, though, comes close to contending that the underlying limitation was cabined to only when a gout attack was occurring. *See id*.[3] The ALJ, therefore, did not err in construing Dr. Laititi's opinions. Second, Tuitele's recitation of purported "abnormal" physical findings in his medical record does not contradict that there is substantial evidence in the record to support the ALJ's determination that Dr. Laititi's opinions were inconsistent with a lack of significantly abnormal exam findings. *See id*. at 29 (citing AR at 360, 368, 432, 476, 504, 513, 519, 521, 526, 869, 902, 1085, 1097-1099, 1130-1136). Moreover, merely because the medical record also contains findings of back and/or neck pain and stiffness, *see* Dkt. No. 14 at 23-24, does not mean that the ALJ's decision was not supported by substantial evidence or even that those findings provided support for Dr. Laititi's opinions. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Therefore, the

---

[3]Moreover, if it was, as Tuitele contends, then there would be no support in the record for his assertion that Dr. Laititi's opinions "unequivocally support[]" that he cannot work (Dkt. No. 14 at 25) because that opinion would be relevant only when Tuitele was suffering a gout attack.

Court does not find that the ALJ erred in assessing the (in)consistency of Dr. Laititi's opinions.

## **CONCLUSION**

For the reasons set forth herein, the Acting Commissioner's decision, denying Tuitele's application for disability insurance benefits, is AFFIRMED. The Clerk of Court is directed to enter judgment in favor of the Acting Commissioner and then close this case.

IT IS SO ORDERED.

DATED: July 8, 2022 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

Max L. Tuitele v. Kilolo Kijikazi; Civil No. 21-00200 DKW-RT; **ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY**